**COVER SHEET FOR FILING CIVIL ACTIONS** with the Circuit Court.... **10975**

COMMONWEALTH OF VIRGINIA

(CLERK'S OFFICE USE ONLY)*

FILED
INTAKE

............................................ **FAIRFAX COUNTY** ........................................................ Circuit Court

2007 SEP 25

.......... **FIA CARD SERVICES, N.A.** .......... v./In re: .......... **T&B MORTGAGE CORPORATION** ..........

PLAINTIFF(S)                    JOHN T. FREY                    DEFENDANT(S)
                    CLERK CIRCUIT COURT
.................................................. FAIRFAX, VA ........ **T&B DEVELOPMENT COMPANY, LLC** ..........

I, the undersigned [ ] plaintiff [x] attorney for plaintiff hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

| | | |
|---|---|---|
| [ ] Accounting | [ ] Construe Will | [ ] Landlord/Tenant |
| [ ] Administrative Appeal | [ ] Contract Action | [ ] Mechanics Lien |
| [ ] Adoption | [ ] Contract Specific | [ ] Medical Malpractice |
| [ ] Adoption - Foreign |     Performance | [ ] Motor Vehicle Tort |
| [ ] Adult Protection | [ ] Correct/Erroneous State/Local | [ ] Name Change |
| [ ] Aid and Guidance |     Taxes | [ ] Order to Sever |
| [ ] Annexation | [ ] Counterclaim | [ ] Partition |
| [ ] Annulment | [ ] Cross Claim | [ ] Petition |
| [ ] Appeal Decision of ABC Board | [ ] Custody/Visitation/Support/ | [ ] Product Liability |
| [ ] Appeal Decision of Board of Zoning |     Equitable Distribution | [ ] Quiet Title |
| [ ] Appeal Decision of Comp Board | [ ] Declaratory Judgment | [ ] Referendum Elections |
| [ ] Appeal Decision of Employment | [ ] Declare Death | [ ] Reformation of Trust |
|     Commission | [ ] Delinquent Taxes | [ ] Reinstatement of Driving |
| [ ] Appeal Decision of Local | [ ] Detinue |     Privileges |
|     Government | [ ] Divorce | [ ] Reinstatement (General) |
| [ ] Appeal Decision of Marine Resources | [ ] Ejectment | [ ] Removal |
|     Commission | [ ] Encumber/Sell Real Estate | [ ] Separate Maintenance |
| [ ] Appeal Decision of Voter | [ ] Enforce Vendor's Lien | [ ] Standby Guardian/ |
|     Registration | [ ] Escheat |     Conservator |
| [ ] Appointment of Church Trustee, | [ ] Establish Boundaries | [ ] Termination of Mineral |
|     Substitute Fiduciaries | [ ] Expunge |     Rights |
| [ ] Approval of Right to be Eligible to | [ ] Forfeiture of U.S. Currency | [ ] Unlawful Detainer |
|     Vote | [ ] Freedom of Information | [ ] Vehicle Confiscation |
| [ ] Asbestos Litigation | [ ] Garnishment | [ ] Will Contested |
| [ ] Attachment | [ ] General Tort Liability (other | [ ] Writ of Certiorari |
| [ ] Bond Forfeiture Appeal |     than motor vehicle) | [ ] Writ of Habeas Corpus |
| [ ] Child Abuse and Neglect - Unfounded | [ ] Grievance Procedures | [ ] Writ of Mandamus |
|     Complaint | [ ] Guardian/Conservator | [ ] Writ of Prohibition |
| [ ] Civil Contempt |     Appointment | [ ] Writ of Quo Warranto |
| [ ] Claim Impleading Third Party | [ ] Impress/Declare a Trust | [ ] Wrongful Death |
|     Defendant | [ ] Injunction | [x] Other Fraudulent |
| [ ] Complaint - (Miscellaneous) | [ ] Interdiction |     Transfer of Prop. |
| [ ] Compromise Settlement | [ ] Interrogatory | |
| [ ] Condemnation | [ ] Intentional Tort | |
| [ ] Confessed Judgment | [ ] Judgment Lien-Bill to Enforce | |
| [ ] Conservator of Peace | [ ] Judicial Review | |

[x] Damages in the amount of $ 490,000.00 ........................................ are claimed.

August 28, 2007                    _Bc F.K_                    EXHIBIT

DATE          [ ] PLAINTIFF   [ ] DEFENDANT   [x] ATTORNEY FOR [x] PLAINTIFF
                                                                    [ ] DEFENDANT

**A**

Miles & Stockbridge, P.C., by Brian F. Kenney

PRINT NAME

1751 Pinnacle Dr., Ste. 500; McLean, VA 22102          703-610-8664

ADDRESS /TELEPHONE NUMBER OF SIGNATOR

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

FILED
CIVIL INTAKE

2007 SEP 10 PM 2: 25

JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

| | |
|---|---|
| **FIA CARD SERVICES, N.A.,** | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * |
| | * |
| **T&B MORTGAGE CORPORATION,** | * |
| Serve:  Registered Agent | * |
| Jin K. Chang | * |
| 12015 Lee Jackson Highway, #540 | * |
| Fairfax, Virginia  22033 | * |
| | * |
| **and** | * |
| | * |
| **T&B DEVELOPMENT COMPANY, LLC** | * |
| Serve:  Registered Agent | * |
| Business Filings Incorporated | * |
| 4701 Cox Road, Suite 301 | * |
| Glen Allen, Virginia  23060-6802 | * |
| | * |
| **Defendants.** | * |
| | * |

Civil No. ___**2007  10075**___

## COMPLAINT

Plaintiff, FIA Card Services, N.A., as successor to Bank of America, N.A.(USA),

by counsel, hereby sets forth its Complaint against the above-named Defendants, as

follows:

### Parties

1.     FIA Card Services, N.A., as successor to Bank of America, N.A. ("the

Bank") is a nationally chartered banking association, with its offices in the State of

Delaware.

2.     Defendant T&B Mortgage Corporation ("T&B Mortgage") is a Virginia

corporation, with its principal place of business located in Fairfax County, Virginia.

3.    Defendant T&B Development Company, LLC, ("T&B Development") is a Virginia limited liability company, with its principal place of business located in Fairfax County, Virginia.

### Supporting Facts

4.    In or about December 6, 2005, for good and valuable consideration, T&B Mortgage entered into a Commercial Card Application and Bank of America Commercial Card Account Agreement ("the Credit Agreement"). A copy of the Credit Agreement is attached as Exhibit A.

5.    Pursuant to the terms of the Credit Agreement, on May 23, 2006, drew $490,000 in credit advances from the Bank. A copy of the Commercial Card Statement dated June 4, 2006, is attached hereto as Exhibit B.

6.    On the same day, May 23, 2006, T&B Mortgage purchased a Cashier's Check in the amount of $490,000 with the cash advances taken under the Credit Agreement. A copy of the Cashier's Check is attached hereto as Exhibit C.

7.    T&B Mortgage delivered the Cashier's Check to a settlement agent, for the purchase of the below-described Property by T&B Development. The below described Property was acquired by T&B Development by Deed dated May 23, 2006, and recorded in the land records of Hampshire County, West Virginia, Book 455, Page 388, on May 24, 2006. A copy of the HUD-1 Settlement Statement is attached hereto as Exhibit D. A copy of the Deed is attached hereto as Exhibit E.

8.    The Property is described as follows:

Beginning at a planted stone on the East side of Grassy Lick Road, thence with the several meanders of said road S. 37 W. 15 poles S. 58 ½ W. 18 poles, S. 39 W. 16 poles S. 8 W. 12 poles S. 37 W. 7.5 poles, S. 20 W. 15.6 poles, S. 37 ½ W. 13.2 poles, S.

46 ¾  W. 9.2 poles, S. 4 ½ W. 11.4 poles to a stone by a large
post on the East side of said road, corner to Roy Haines and
Jesse H. Shanholtz; thence with Haines' line S. 76 E. 98 poles to
a stone; thence N. 40 1/4 E. 38.7 poles to a stone pile near a
marked white oak, thence S. 69 ¾ E. 80 poles to a stone; thence
S. 41 E. 78 poles to 4 chestnut oaks on top of Stony Mountain,
thence N. 65 E. 23 ½ poles to a stone pile by 2 chestnut oaks,
thence N. 24 E. 98 poles to a stone corner to Alberta R.
Bowman, thence with her line N. 83 ½ W. 248 poles to the
beginning, containing 150 acres, more or less."

LESS, HOWEVER, that certain outconveyance of 5.241 acres,
more or less, situate in Sherman District, Hampshire County
West Virginia, which was conveyed by Lawrence W. Bean and
Criselta Bean, his wife, unto Eddy L. Bean, by deed dated
November 5, 1984, and which said deed is of record in the
Office of the Clerk of the County Commission of Hampshire
County, West Virginia, in Deed Book No. 273, at page 584.
Said Deed is by reference made a part hereof for a more
particular description of said outconveyance and for all pertinent
and proper reasons.

THUS LEAVING for purposes of this conveyance
144.759 acres, more or less, according to the 2005 Hampshire
County Land Books, and this conveyance is made in gross and
not by the acre.

9.      T&B Mortgage is in default under its Credit Agreement with the Bank.

The Bank has made demand on T&B Mortgage for all sums due to it under the Credit

Agreement.

## Count I
## (Va. Code §§ 55-80 and 82)

10.      The Plaintiff incorporates all of the above allegations in this Count I.

11.      The acquisition of the Property in the name of T&B Development was a

transfer avoidable under Va. Code Sections 55-80 and 82, in that it was a transfer with

the intent to hinder, defraud or delay the creditors of T&B Mortgage.

12. Specifically (but without limiting the generality of the foregoing, upon information and belief:

- T&B Mortgage is wholly owned by Jeannie Chang. T&B Development is wholly owned by her brother, Jin K. Chang.

- The acquisition of the Property in the name of T&B Development was an arms length transaction, and was not made on ordinary business terms.

- The acquisition of the Property in the name of T&B Development was not documented as a loan from T&B Development to T&B Mortgage.

- The acquisition of the Property in the name of T&B Development was done at a time when T&B Mortgage did not have the ability to repay the $490,000 in cash advances, and therefore, was insolvent at the time of the transfer and acquisition of the Property.

13.    For the foregoing reasons, the acquisition of the Property in the name of T&B Development was a transfer avoidable under Va. Code §§ 55-80 and 82. Further, the Plaintiff is entitled to its attorney's fees and costs herein, pursuant to Va. Code § 55-82.

**COUNT II**
**(Va. Code §§ 55-81 and 82)**

14.    The Plaintiff hereby incorporates in this Count II all of the above allegations.

15.    The acquisition of the Property in the name of T&B Development was without valuable consideration. It was made at a time when the transferor, T&B Mortgage, was insolvent, or was rendered insolvent by the transfer. It was made at a time when the Bank was a creditor of the transferor, T&B Mortgage.

16.     Accordingly, the acquisition of the Property in the name of T&B
Development was a transfer avoidable under Va. Code §§ 55-81 and 82. Further, the
Plaintiff is entitled to its attorneys fees and costs, pursuant to Va. Code § 55-82.

WHEREFORE, the Plaintiff prays for the following relief:

A.     That the Court avoid the acquisition of the Property in the name of T&B
Development, pursuant to Count I and Va. Code § 55-80;

B.     That the Court avoid the acquisition of the Property in the name of T&B
Development, pursuant to Count II and Va. Code § 55-81;

C.     That the Court award the Plaintiff its attorney's fees and costs pursuant to
Va. Code § 55-82; and

D.     That the Court grant such other and further relief as may be appropriate in
this case.

Respectfully submitted,

FIA Card Services, N.A., as
successor in interest to
Bank of America, N.A.
Plaintiff, by counsel

**MILES & STOCKBRIDGE P.C.**
1751 Pinnacle Drive, Suite 500
McLean, VA 22102
Tel:    (703) 610-8664
Fax:    (703) 610-8686
bkenney@milesstockbridge.com

By:     _____
        Brian F. Kenney (VSB #23199)
        Counsel for FIA Card Services, N.A.,
        As Successor in Interest to Bank of America, N.A.

**Bank of America Commercial Card Application**
**Featuring Visa Extras**

1) Legal Name of Company: **T&B Mortgage Corp.**

2) DBA Company Name: **T&B Mortgage Enterprises**
   (This is the name that will be embossed on the cards; maximum 23 spaces.)

3) Legal Address Line 1 (maximum 23 spaces): **2812 Old Lee Hwy #300**

4) Legal Address Line 2 (maximum 23 spaces):

5) Legal City, State, ZIP Code: **Fairfax, VA 22031**

6) Company Tax ID#: **54-2044199**   Annual Revenue: $ **5 mil.**
   No. of Employees: **100**   Yrs. in Business: **7**   SIC#: _____ NAIC#: _____ (if known)

7) Type of Organization:

   C-Corp.   ☒   S-Corp.   ☐   Limited Liability Partnership   ☐
   Partnership   ☐   Sole Proprietorship   ☐   Government/ Municipality   ☐
   Not for Profit   ☐   Limited Liability Company   ☐   Other

8) Name of Company Card Program Administrator (day-to-day contact): ~~Jim Park~~ **Jeannie Chavy**

9) Program Administrator's Phone and Fax #: **703-720-5403 // (F) 703-573-3873**

10) Program Administrator's E-mail Address (required): **jeannie@hbmortgage.com**

11) Program Administrator's Company Address: **2812 Old Lee Hwy Ste 300**
    (recorded as company's statement delivery address): **Fairfax, VA 22031**

Your Program Administrator will be our contact for Visa Information Source (VIS) and account owner for company level Visa Extras program. Your Program Administrator will be contacted by our Implementation Team to begin cardholder setup. Cardholder setup forms and instructions will be forwarded via e-mail after the application is processed by Bank of America. You may contact Implementation by calling 1.800.822.5985.

**Card Program Election**

12) Does your company elect the Internet Reporting option?   ☒ Yes   ☐ Yes, plus Workflow   ☐ No
    (Microsoft or Netscape Web browser required.)   If no, do you want monthly paper reports?   ☐ Yes   ☐ No

13) Do you wish to take advantage of our "Best Practice" company bill recommendation where all transactions
    will be billed to one account?   ☒ Yes   ☐ No
    If no, then all cardholder accounts are set up for individual bill and any reporting fees will be charged to a company bill.

14) Billing Cycle (the day the company's monthly statement is generated - choose between 4 and 27):   **4**   day of each month

15) Choose a Payment Method:
    ☐ ACH Debit (specify DDA and TR#)   ☐ ACH Credit*
    DDA#_____
    Transit/routing#_____   *ACH Credit– Contact Client Level Support for forwarding instructions @ 1.800.829.9825.

16) What is your company's annual procurement spend target for the card program?   $ **1,500,000**
    (Required to calculate credit line of company)

17) What is your company's annual travel and entertainment spend target for the card program?   $ **500,000**
    (Required to calculate credit line of company)

18) Does your company wish to participate in Visa Extras*?   ☒ Yes   ☐ No

19) Do your Executives wish to have Gold Executive cards (10 max.)?   ☒ Yes   ☐ No

20) Do you wish to add your company's logo on the cards?   ☒ Yes   ☐ No

* By signing this agreement Applicant acknowledges that he/she has received, read and agrees to the Bank of America Visa Extras General Terms and Conditions. Your rewards option is determined by the billing option (line 13 above). Company billed clients receive company level rewards (all reward points applied to one account). Individual billed clients receive individual rewards (reward points applied to each card holder's account).

**Bank of America**

PLAINTIFFS
EXHIBIT
A

## ...ment to the Terms and Conditions

If Applicant is a Partnership, all general partners must sign; if Applicant is a Limited Liability Company, all members must sign. The entity named above (the "Applicant"), by signature of its authorized representative below, on behalf of Applicant, requests Bank of America, N.A. (USA) (the "Bank") to establish in the name of Applicant, card accounts ("Accounts") for purchase, travel and/or fleet card services. Applicant expressly acknowledges receipt of the Bank's Commercial Card Account Agreement ("Commercial Card Agreement") with this application. Applicant further acknowledges that it has read and agrees to the terms of this application and the Commercial Card Agreement, including that, with certain exceptions, claims related to the Account will be determined by binding arbitration. Any person signing below as the duly authorized representative of Applicant attests that the Applicant is a valid business entity that each person signing below is authorized to make this application on behalf of the Applicant and to bind the Applicant to the terms of this Application and the Commercial Card Agreement, and certifies that the information provided in this application is true, correct and complete.

This application is subject to the Bank's credit approval.

Applicant grants to Bank of America, N.A. (USA) a continuing, subsidiary security interest in, and hereby assigns and pledges to have of America, N.A. (USA) all deposits now or hereafter maintained with Bank of America, N.A. (USA) or any of the Bank of America affiliates and subsidiaries. Applicant authorizes Bank of America, N.A. (USA) and each of its affiliates and subsidiaries to: (1) charge or setoff all sums hereafter owed under the Commercial Card Agreement and not paid as required against any and all such deposits and (2) administratively freeze all such deposits to allow Bank of America, N.A. (USA) the security interest and setoff rights provided above.

By signature of its authorized representative(s) below, Company agrees to the terms and conditions as above.

| | |
|---|---|
| _Jin K.   Chang_ | |
| Name of Applicant | Name of Applicant |
| By: _[signature]_ | By: _____ |
| Title: _President_ | Title: _____ |
| Date: _12/16/05_ | Date: _____ |

For fee and term information, refer to the Commercial Card Account Agreement which accompanies this application. If you require assistance in filling out this application or have any questions, please contact your Bank of America Commercial Banking Representative or call 1.800.822.5985 and select the Team Servicing option.

---

**BANK USE ONLY (please print):**

Please provide special comments concerning the booking of this client.

Sales Officer Name: _____

Sales Officer Phone: (    ) _____

Sales Referral Name: _____

Sales Referral Phone: (    ) _____

Date Application Received From Client: ___/___/___

Bank of America Card Conversion? _____

Credit Line Request    $ _____
To calculate: (Line 58 + Line 57) ÷  28 or if 58 client (Line 58 + Line 57/32) x 2.5

GCI#: _____    (P)    ☐ Growth    ☐ Strategies

NOTE: New Bank clients require on-site resolution, two full years' financial statements and current year-to-date financial statements.

---

**WAIVER PROGRAM:** Depending on whether the Account is a Visa account or a MasterCard account, the Account will be subject to either the Visa Liability Waiver Program or the MasterCoverage® Liability Protection Program. This coverage is designed to protect financial institutions and companies from employee misuse of the Account resulting in unauthorized Transactions. Bank of America will waive Company's liability for waivable charges up to the limit of coverage as provided in the liability waiver program ("Waiver Program") upon notice by the Waiver Program Underwriters that the Transaction at issue qualifies as a waivable charge. This waiver will be according to the terms and subject to the exclusions of the Waiver Program as established from time to time by the Waiver Program Underwriters, including without limitation, the condition that Company meets all of its obligations under the Waiver Program which may change from time to time. Current terms of the Waiver Program as set forth in the brochure which Bank of America will provide to Company are incorporated in this Agreement by reference. The Waiver Program may be terminated by Bank of America or the Waiver Program underwriters, effective immediately upon notice to Company.

**UP TO $500,000 TRAVEL ACCIDENT INSURANCE:** This coverage will offer up to $500,000 in automatic common carrier travel, accidental death and dismemberment insurance when employees charge fullfare tickets for land, sea, or air public transportation on their Cards.

**BANK OF AMERICA VISA EXTRAS:** There is a separate Terms and Conditions document for this program. You should obtain a copy from your Bank of America Sales Officer and review it in its entirety.


BankofAmerica

## BANK OF AMERICA COMMERCIAL CARD ACCOUNT AGREEMENT

THIS COMMERCIAL CARD ACCOUNT Agreement ("Agreement") governs Commercial Card Accounts and becomes effective upon Bank of America, N.A. (USA)'s (the "Bank") written approval of the Company's application for a Commercial Card Account. "Company" in this Agreement means the business organization which executed an application requesting a Commercial Card Account. By activating, signing or using any Device or Account, Company agrees to be bound by this Agreement.

**1. DEFINITIONS:** "Account" means each MasterCard or VISA account, including a Cardless Account, which the Bank issue to Company or to a Cardholder pursuant to this Agreement, with the features and uses described in Section 2 below. Each reference in this Agreement to "the Account" will mean Company's Account; a Cardholder's Account, or any combination of them, as applicable. "Business Use" means use for business-related purposes. "Card" or "Commercial Card" means each plastic charge card which the Bank issues for an Account which is not a Cardless Account. "Card Administrator" means the individual or a business authorized by Company to act the Bank to set up, modify, add or delete Cards or Convenience Checks and to communicate with the Bank and take other action needed to maintain the Account. "Cardholder" means an employee or agent of Company who Company designates in writing and who the Bank approves to receive an Account or a Device, including a Cardless Account. If a Cardholder or a Card Administrator makes a Device available for use by another party, that person will be considered a Cardholder. "Cardless Account" means an Account for which the Bank assigns only an Account number, but provides no Card or Convenience Check. "Convenience Check" means each check which the Bank at its discretion provides to Company to use the Account. "Device" means a charge such as a Card, Account number or, where applicable, a Convenience Check which the Bank provides under this Agreement to use any Account. Transactions or other charges are an Account. "Transaction" means a purchase or reservation of a goods or services or of a cash advance made or incurred by use of a Device or an Account. "Unauthorized Use" means use of an Account or a Device by a person, (i) who is not a Cardholder or an employee or agent of Company; (ii) who does not have actual, implied or apparent authority to use the Account, and (iii) whose use does not rest in a direct or indirect benefit to Company.

**2. ACCOUNT TYPE:** Company shall designate with respect to each Card whether it will have travel and entertainment, purchasing, cash advance and/or fleet features.

**3. USE OF ACCOUNT AND DEVICES.** (a) If an Account has the travel and entertainment feature, the Account is for Transactions in connection with travel and entertainment services. (b) If an Account has the purchasing feature, the Account is for Transactions in connection with the procurement of goods and services incidental to Company's business or business activities. If an Account has the fleet feature, the Account is for Transactions to obtain motor fuel and other authorized related products and services. (c) Company shall use the Account for Business Use only. Company will pay for Transactions and Fees which the Bank applies to the Account (or Devices). (d) If the Bank provides Convenience Checks, they may not be used to make payment on the Account. Convenience Checks will not be returned to Company or Cardholder. The Bank may pay a Convenience Check and post its amount to the Account regardless of any restriction on payment, including, without limitation, a Company may check which is post dated, means that it is void when a certain date or states a minimum or minimum amount for which it may be written. (d) The Bank may, at the request of Company, establish a Cardless Account. Bank and will destroy the Devices issued or provided to that Cardholder, if this Agreement terminates, Company will be responsible for continuing all Devices for the Account. (f) A Transaction may require the merchant, supplier or financial institution to seek prior authorization from the Bank before approving the Transaction. If Company believes the Bank in control of to desire to restrict Transactions to those merchants falling within up to five (5) categories designated by the Bank, then Bank will have reasonable discretion to prevent authorization of other types of Transactions. However, the Bank will not be liable to Company if a merchant or supplier does not honor a Card or if authorization is not given.

**4. CHARGE LIMIT.** Company will be given a total charge limit for all Company Accounts ("Aggregate Charge Limit"). Each Card will have its own charge limit ("Card Limit"). In its sole discretion, the Bank may increase or decrease the Aggregate Charge Limit or any Card Limit. Company will not in its obligations to the Bank which would cause the aggregate's unpaid balance to exceed the Aggregate Charge Limit. If Company exceeds the Aggregate Charge Limit or a Cardholder exceeds the Card Limit, the excess will be deemed immediately due and payable by Company at the option of the Bank. If the Aggregate Charge Limit or the Card Limit is reached, or if an Account payment is late, the Bank will have the right not to allow any further Transactions until the Account is brought current and the unpaid balance is within the Aggregate Charge Limit.

**5. COMPANY LIABILITY SECURITY INTEREST.** Company will pay Bank of America for all Transactions, regardless of the purpose for which a Transaction is made; and for applicable fees and charges described below. However, if there are fewer than 30 Cards issued for any Account, Company's liability for Unauthorized Use will not exceed $50 on each Card. Company's responsibility for Card and Account usage will continue until the issuer with (i) Company's notice to the Bank to close the Card or the Account plus a reasonable time to process such information and (ii) payment for Transactions made before the Bank closes the Card or the Account to future use. Company does hereby grant to Bank of America, N.A. (USA) a security interest and contractual right of offset in and to, all deposit accounts, now or subsequently maintained by the Company with Bank of America or any of its affiliates and subsidiaries. The Company, by its execution of this Agreement to use or a Device, authorizes Bank of America to enter into a formal common agreement with its affiliates and subsidiaries authorizing, upon the occurrence and continuance of any debt under this Agreement, the disposition of funds in any such deposit accounts to satisfy all liabilities incurred hereunder, without the further consent of the Company. The Company's execution of this Agreement or use of a Device shall constitute an authenticated record for the purposes of establishing control of such deposit accounts under the Uniform Commercial Code.

**6. BILLING STATEMENTS.** The Bank will provide a monthly billing statement ("Billing Statement") to the Card Administrator or as it in such other Company employee or when, as Company designates in writing. Each Billing Statement will identify each Transaction posted during the billing cycle and as in the Billing Statement and the time of each Transaction. The Billing Statement will also set any fees and charges which apply. Where Company has elected individual billing and electronic statement presentation Transactions, Bank will arrange the monthly billing statement covering the use of the relevant individual Card to the Cardholder. A Cardholder's address for receipt of a billing statement will be the address provided by Company or Cardholder to Bank and accepted by Bank.

**7. PAYMENTS.** Company will pay the Bank the total amount shown as due on each Billing Statement on or before the Payment Due Date shown on that Billing Statement. If Company does not make payment in full by the Payment Due Date, in addition to its other rights under this Agreement, the Bank, at its option, may assess a late fee and finance charge in accordance with this Agreement. There is no right to defer any payment due on an Account.

**8. ACCOUNT FEES.**
A. Annual Fee. We impost the shall apply to the Accounts for the first twelve billing cycles from the date the first Account is established hereunder. Thereafter, the annual fee will be charged to each Account on the Annual Fee Billing Date. The "Annual Fee Billing Date" shall be, initially a Banks will done during the thirteenth billing cycle of the first Account established hereunder and thereafter, each successive twelve-month anniversary of such date. For Account a period after the Annual Fee Billing Date, the initial annual fee shall be a pro-rated amount and shall be charged to the Account during the first billing cycle. The amount of the annual fee will depend on Company's Actual Net Transaction Volume, "Actual Net Transaction Volume" means the total dollar amount of purchases charged to all Accounts less all credits, for the twelve complete billing cycles immediately preceding the respective annual fee Billing Date. If the Actual Net Transaction Volume is less than $250,000, the annual fee will be $250,000. Cash advances are not included in Actual Net Transaction Volume.
B. Other Account Fees. A reporting fee will be charged to one of Company's Accounts each month, the amount of which is as follows: Web information Source monthly based reporting $100.00; Web information Source with Expense report workflow module $250.00, FWS Net Interest earned is accrued $250.00. Detailed paper reporting $20.00. A fee of $5.00 will be charged for each book of 25 Convenience Checks. An overlimit fee of $20.00 for individual billed Accounts and $250.00 for centrally billed Accounts will be charged. If, at any time, during a billing cycle, an Account Card Limit is exceeded. A returned payment fee of $20.00 will be charged for any payment on an Account that is returned to the Bank unpaid. A copy charge of $5.00 will be charged for any record requested on an Acc. ct. An overnight card delivery fee of $30.00 will be charged whenever expedited Card delivery is requested. A late payment fee of $69.00 for individual billed Accounts will $250.00 for centrally billed Accounts will be charged if the Bank does not receive payment of the entire balance by the respective Payment Due Date. A custom merchant profile fee of $250.00 will be charged for each to $250.00 will be charged for each business. A fee of $2,500.00 will be charged for each custom Card logo. A fee of $2,500.00 will be charged for each custom interface.

**9. FINANCE CHARGES.**
A. Finance Charge On Past Due Balance. In the event Company fails to pay the total amount shown as due on a Billing Statement by the Payment Due Date shown on that Billing Statement, the amount of the unpaid shall be subject to a finance charge calculated by the daily periodic rate to the average daily balance, and that product is multiplied by the number of days in the billing cycle. The daily periodic rate is determined by dividing by 365, the annual percentage rate in the prime rate published in the Money Rates section of the Wall Street Journal on the first business day of each calendar month (the "Prime Rate") plus 9% percentage points. The average daily balance is the sum of the daily past due balances divided by the number of days in the billing cycle.
B. Cash Advance Fee Finance Charge. 3% of the cash advance with a $2.00 minimum.
C. Convenience Check Finance Charge. 3% of amount of transaction with a $2.00 minimum.

**10. CARD ADMINISTRATION.** Company will identify one or more Card Administrator(s) who will be the Bank's primary contact for such things as designation of Cardholders to receive any Devices and receipt of communications regarding the Account or this Agreement, unless provided elsewhere it also an account. Only a Card Administrator is Company in finance or accounting officer or employee with actual, implied or apparent authority may add, change or eliminate a Card and information by giving the Bank written notice.

**11. LOST OR STOLEN CARDS.** In the event of possible loss or theft of a Card, Convenience Check feature applicable or Account or Unauthorized Use, Company agrees to notify Bank by phone at 1.800.500.8024, or write to Commercial Card Services, Bank of America, N.A. Box 53101, Phoenix, Arizona 85072-3101. (Repeat 800724101). Company also agrees to take such action as it may require in determining the facts and circumstances related to any loss or theft of Unauthorized Use in Cards, Convenience Check feature to may be required by Bank of America. Following from the Cardholder to whom Unauthorized Use of the Account assumes devices such a Card or Convenience Check feature applicable pursuant to the Agreement, all Transactions incurred by use of such Account access devices by a Cardholder will be assumed authorized unless and until Bank receives written notice that the Cardholder is no longer authorized to use the Account access devices.

**12. MERCHANT/SUPPLIER CLAIMS AND DISPUTES.** The Bank will have no liability for goods or services purchased by use of the Account or any Card. Company will make a good faith effort to resolve with a merchant or supplier any claim or dispute arising from a Transaction and will make a refund for any Device. In a dispute with a merchant or member, the Bank will be reimbursed to the rights of Company (and will require the affected Cardholder to assign to the Bank its rights to assert a claim) and may require the affected Cardholder to assign to the Bank its rights to assert a claim. The merchant or supplier will and will require the Cardholder to do whatever is necessary to enable the Bank to exercise those rights. The Bank is not relieved from the Account any amounts relating to the dispute.

**13. FOREIGN TRANSACTIONS.** MasterCard or Visa will convert to U.S. dollars any charge made in a currency other than U.S. dollars. The conversion rate will be determined under MasterCard or Visa regulations, as applicable. The conversion rate may differ from the rate in the case of the transaction. Company, MasterCard and Visa use a currency conversion rate of either: (1) a wholesale market rate, or (2) a government-mandated rate, increased by an adjustment factor. Accepted by the Bank and Visa or MasterCard. In both cases, Visa uses the rate in effect one day prior to the transaction date and MasterCard uses a rate for the processing cycle. The adjustment factor which is subject to change without notice is currently 2% of the U.S. dollar amount of which the conversion was made. Visa and Visa or MasterCard receives the remittance. The Bank will look to the Account the converted U.S. dollar amount determined by MasterCard or Visa as described above.

**14. REPRESENTATIONS AND WARRANTIES.** Company represents and warrants to the Bank that: (i) in each state in which it conducts its business, it is properly licensed, in good standing, and in compliance with applicable state statutes; (ii) all licenses and other information that it has supplied to the Bank is correct; (iii) the Bank's evaluation, conduct, financial, all information on its application for the Account, is (a) accurate; (b) sufficiently complete to give the Bank assurance (iv) all of Company's financial statements (c) in compliance with all laws and regulations that apply; (iii) there is no lawsuit, tax claim or other dispute pending or threatened against it which, if lost, would impair Company's financial condition or ability to repay the Bank under this Agreement; (iv) there is no event which constitutes, or with notice or lapse of time or both would constitute, a default on its part under this Agreement and (v) each person which signed the application for Company was and is duly authorized by it to bind this party to the terms and conditions of this Agreement.

**15. PERIODIC REVIEW OF COMPANY.** During the term of this Agreement, whenever the Bank requests information from Company for the purpose of reviewing Company's ability to perform its obligations under this Agreement, Company will furnish the information promptly. The Bank and its officers and processing agents may evaluate information about Company. Company will notify the Bank in writing immediately of any change in its business name, the principal officers the the Chief Executive Officer, and Chief Financial Officer, the mailing address or the phone number of Company. Company will also notify the Bank of any change of mailing address or phone number of any of its Cardholders.

**16. SUSPENSION; TERMINATION; ACCELERATION.**
A. Either party may terminate this Agreement, without cause, by written notice to the other party.
B. In addition to its other rights, should any of the following events occur, the Bank may, at its option, immediately without notice to Company, suspend its obligations hereunder or terminate this Agreement, and (in either such event, all amounts outstanding will become immediately due and payable: (i) dissolution, termination, liquidation or insolvency of Company. The use of force or the Account will be considered the extension of financial accommodations under this Agreement; (ii) Company is declared insolvent; (iii) Company fails to perform as agreed under this Agreement, any other agreement relating to the Agreement, or any other Agreement Company has with the Bank or any affiliate of the Bank; (iv) institution of attachment, garnishment, or levy proceedings against Company, which at and will at and last within 20 days of change in ownership of Company; (v) makers of SOS; or (v) the Bank's receipt of false or misleading information or representations from Company; (vi) in (vi) death of any debtor, if Company is a trust; (vii) death of any guarantor, if Company is a partnership; (viii) death of a maker, shareholder of Company if it is a corporation; (ix) appointment of a receiver or similar official for Company's business; (x) termination of a business; (xi) assumption of any material default under any other agreement in connection with any credit Company has obtained from anyone else or where Company has guaranteed; (xii) occurrence of any default under any agreement made in connection with this Agreement or the occurrence of any event which renders the Agreement ineffective or a material change in Company's financial condition, properties or prospects or ability to repay Transactions; or (xiii) Company's failure to meet the criteria initially used by the Bank to approve Company's application for a Commercial Card Account.
C. Upon termination of this Agreement, Company will immediately destroy, or instruct Cardholders to destroy, all Devices. Termination will not relieve Company of liability for any charge or other obligations under this Agreement. After termination, this Agreement (except the ability to use the Account for additional Transactions) will remain in force until all Transactions and Company's other obligations under this Agreement are paid and satisfied in full except that Transactions occur pursuant to Section 16.B. thereof, that all amounts outstanding will become immediately due and payable. After termination, Company and Cardholders will make no new Transactions on the Account. However, if any Transactions are made notwithstanding the above, Company will be liable until any are paid in full.

**17. VISA EXTRAS.** Company's participation in Visa Extras shall be subject to the Visa Extras General Terms and Conditions, a copy of which is enclosed with the Commercial Card Account Agreement. Company acknowledges receipt of the Visa Extras General Terms and Conditions and will make a copy of the Visa Extras General Terms and Conditions available for each individual Cardholder who is chosen by Company to participate in Visa Extras. Bank of America and Visa each has the right to suspend or terminate the Visa Extras Program or Company's participation in the Visa Extras Program, at any time without prior notice. Bank of America or Visa each reserves the right to add, eliminate or modify a specific reward or the point and reward structure of the Visa Extras Program at any time. A non-refundable annual participation fee must be paid for each Cardholder who participates in the program. The annual participation fee will be charged to each Cardholder, in the month in which the Account is in a enrolled and annually thereafter. Refer to the Visa Extras General Terms and Conditions for the amount of the fee. The Visa Extras General Terms and Conditions are incorporated herein by reference.

**18. GOVERNING LAW.** This Agreement is made in Arizona. This Agreement and the Account, as well as the Bank's rights and duties regarding this Agreement and the Account, will be governed by the laws respecting national banking associations and, to the extent not so covered, by the laws of the state of Arizona, regardless of where Company resides or where a Cardholder uses the Account at any time. Company will submit to the personal jurisdiction of any state or federal court or of American Arbitration Association located in Arizona.

**19. ARBITRATION.** Except as provided herein, each dispute or controversy over any this Agreement will be settled by arbitration under the commercial arbitration rules of the American Arbitration Association and United States Arbitration Act, and all applicable statutes of limitation will be tolled. The United States Arbitration Act will apply, notwithstanding Section 18. Notwithstanding the foregoing, the Bank may sue Company in a court to collect any unpaid Account balance or other amounts owed under this Agreement.

**20. COSTS AND ATTORNEY FEES.** If either party incurs expenses related to enforcement of, or takes collection action under, this Agreement, the prevailing party is entitled to recover from the other party costs and reasonable attorney fees, including any allocated costs of in-house counsel.

**21. TELEPHONE MONITORING.** The Bank may listen to and/or record telephone calls between a Bank employee and any person acting on Company's behalf for the purpose of monitoring and improving the quality and effectiveness of the Bank's communication.

**22. SUCCESSORS AND ASSIGNS.** This Agreement and all terms and conditions hereof, are not assignable or transferable by Company without the Bank's prior written consent. All the terms and provisions of this Agreement will inure to the benefit of and be binding upon each party and its successors and permitted assigns.

**23. NOTICES.** Notices to the Bank must be sent to: Bank of America, P. O. Box 53101, Phoenix, AZ 850723101.

**24. SEVERABILITY.** If any provision of this Agreement is held to be invalid, void or unenforceable, all other provisions in this Agreement will remain valid and enforceable.

**25. LIMITATION OF LIABILITY.** IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES OR LOST PROFITS OR LOST DATA.

**26. WARRANTY DISCLAIMER.** ALL SERVICES, EQUIPMENT, SOFTWARE AND OTHER PRODUCTS FURNISHED BY BANK OF AMERICA TO COMPANY ARE PROVIDED ON AN "AS IS," "AS AVAILABLE" BASIS AND BANK OF AMERICA EXPRESSLY DISCLAIMS ALL WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. COMPANY ACKNOWLEDGES AND AGREES THAT IN ADDITION TO THE FOREGOING WARRANTY DISCLAIMER, THE USE OF ALL THIRD-PARTY SOFTWARE PROGRAMS PROVIDED TO COMPANY IN CONNECTION WITH THIS AGREEMENT WILL BE GOVERNED BY THE TERMS OF THE END USER AGREEMENT ACCOMPANYING THE SOFTWARE.

**27. NO WAIVER.** No failure on the part of the Bank to exercise, and no delay in exercising any right under this Agreement, will operate as a waiver of that right.

**28. AMENDMENT OF THIS AGREEMENT.** The Bank may amend this Agreement by changing, adding or deleting any term, condition, service or feature of the Account or of this Agreement by giving written notice to Company not less than fifteen (15) days prior to the effective date of the amendment or at any time (15) days prior to the beginning of any billing cycle which includes said amendment, will become effective. If there is the earlier of five. Any such amendment will apply to the Account's unpaid balance and to the new activity on the Account. Unless Company terminates this Agreement prior to the effective date of any amendment, Company will be deemed to have agreed to said amendment.

BBCCA Bank of America Corporation
0045d4398 | 1/03/06 | 08/000

**Bank of America**

342220060604

# Bank of America
# Commercial Card
# Company Statement

| | | | |
|---|---|---|---|
| Statement Date | 06-04-06 | Payment Due Date | 06-22-06 |
| Credit Limit | $500,000 | Days in Billing Cycle | 31 |
| Cash Limit | $500,000 | Total Payment Due | $506,634.81 |

T & B Mortgage Enterprises
Jeannie Chang

**Company Account Number:**
3422

Page 1 of 2

## COMPANY MESSAGES

YOUR ACCOUNT IS CURRENTLY OVERLIMIT.  PLEASE REMIT THIS OVERLIMIT AMOUNT TO US IMMEDIATELY OR CALL (877) 321-4862.

## COMPANY SUMMARY

| T & B MORTGAGE ENTERP 3422 | Previous Balance | - Payments | - Credits | + Cash | + Purchases/Other Debits/Fees | + Finance Charges | = Current Balance |
|---|---|---|---|---|---|---|---|
| Company Total | $3,000.81 | $3,081.00 | $0.00 | $504,700.00 | $2,015.00 | $0.00 | $506,634.81 |

**Customer Service**
1.888.449.2273, 24 hours

**Outside the U.S.**
1.602.597.4438, 24 hours

**For Lost or Stolen Card:**
1.888.449.2273, 24 hours

**Send Billing Inquiries to:**
BANK OF AMERICA
PO BOX 2463
SPOKANE WA  99210-2463

### Finance Charges

| | Average Daily PD Balance | Daily Periodic Rate | Annual Percentage Rate | Periodic Finance Charge |
|---|---|---|---|---|
| Purchases | $0.00 | 0.03836% | 14.00% | $0.00 |
| Cash | $0.00 | 0.03836% | 14.00% | $0.00 |
| Total Annual Percentage Rate | | | | 36.00% |

### Company Account Summary

| | | |
|---|---|---|
| Previous Balance | | $3,000.81 |
| Payments | - | $3,081.00 |
| Credits | - | $0.00 |
| Cash | + | $490,000.00 |
| Purchases | + | $1,750.00 |
| Other Debits | + | $0.00 |
| Overlimit Fee | + | $250.00 |
| Late Payment Fee | + | $0.00 |
| Cash Fee | + | $14,700.00 |
| Other Fees | + | $15.00 |
| Finance Charge | + | $0.00 |
| Current Balance | = | $506,634.81 |

## Commercial Card Payment Coupon

**Bank of America**

| | |
|---|---|
| Company Account No. | 3422 |
| Payment Due Date | 06-22-06 |
| Total Payment Due | $506,634.81 |

Please Enter Amount Enclosed   $ _____ . ____

Make check or money order payable to:
BANK OF AMERICA
Mail payment to address below and include account number on check.

T & B MORTGAGE ENTERPRISES
JEANNIE CHANG
2812 OLD LEE HWY.
SUITE 300
FAIRFAX VA  22031

BANK OF AMERICA
PO BOX 60073
CITY OF INDUSTRY CA  91716-0073



342206634810663481

This is an electronic reproduction of the front side of your statement and does not contain the disclosures that were made on the reverse side of your original statement.

**Bank of America**
**Commercial Card**
**Company Statement**

342220060604

| | | | |
|---|---|---|---|
| Statement Date | 06-04-06 | Payment Due Date | 06-22-06 |
| Credit Limit | $500,000 | Days in Billing Cycle | 31 |
| Cash Limit | $500,000 | Total Payment Due | $506,634.81 |

T & B Mortgage Enterprises
Jeannie Chang

**Company Account Number:**
3422

Page 2 of 2

## CARDHOLDER SUMMARY

| | Credits | Cash | Purchases and Other Debits | Total Activity |
|---|---|---|---|---|
| JEANNIE CHANG  3430 | | | | |
| Credit Limit $500,000 | $0.00 | $504,700.00 | $1,750.00 | $506,450.00 |

## COMPANY DETAIL

| Post Date | Tran Date | Reference Number | Transactions | Charge | Credit |
|---|---|---|---|---|---|
| 05-29 | 05-26 | 1460600575005263180609 | VA Banking Center payment | | 3,081.00 PY |
| 06-02 | 06-02 | | MONTHLY REPORTING FEE $15 | 15.00 | |
| 06-02 | 06-02 | | OVERLIMIT FEE | 250.00 | |
| | | | Total Company Charges and Credits | $265.00 | $3,081.00 |

## CARDHOLDER ACTIVITY
## PURCHASING ACTIVITY

| Post Date | Tran Date | Ref. No. | Transactions | MCC | Acct # | Charge | Credit |
|---|---|---|---|---|---|---|---|
| 05-15 | 05-13 | 24301 | LA MIRAGE BEAUTY SALON  703-6584995  VA | 7230 | 3430 | 1,750.00 | |
| | | | PURCHASING ACTIVITY | | | | $1,750.00 |

## MISCELLANEOUS FEES & ADJUSTMENTS

| Post Date | Tran Date | Ref. No. | Transactions | MCC | Acct # | Charge | Credit |
|---|---|---|---|---|---|---|---|
| 05-24 | 05-23 | 74492 | BANK OF AMERICA VA1680  FAIRFAX  VA | 6010 | 3430 | 99,000.00 | |
| 05-24 | 05-24 | 74492 | ***FINANCE CHARGE*** CASH ADVANCE FEE | 6061 | 3430 | 2,970.00 | |
| 05-24 | 05-23 | 74492 | BANK OF AMERICA VA1680  FAIRFAX  VA | 6010 | 3430 | 99,000.00 | |
| 05-24 | 05-24 | 74492 | ***FINANCE CHARGE*** CASH ADVANCE FEE | 6061 | 3430 | 2,970.00 | |
| 05-24 | 05-23 | 74492 | BANK OF AMERICA VA1680  FAIRFAX  VA | 6010 | 3430 | 94,000.00 | |
| 05-24 | 05-24 | 74492 | ***FINANCE CHARGE*** CASH ADVANCE FEE | 6061 | 3430 | 2,820.00 | |
| 05-24 | 05-23 | 74492 | BANK OF AMERICA VA1680  FAIRFAX  VA | 6010 | 3430 | 99,000.00 | |
| 05-24 | 05-24 | 74492 | ***FINANCE CHARGE*** CASH ADVANCE FEE | 6061 | 3430 | 2,970.00 | |
| 05-24 | 05-23 | 74492 | BANK OF AMERICA VA1680  FAIRFAX  VA | 6010 | 3430 | 99,000.00 | |
| 05-24 | 05-24 | 74492 | ***FINANCE CHARGE*** CASH ADVANCE FEE | 6061 | 3430 | 2,970.00 | |
| | | | MISCELLANEOUS ACTIVITY | | | | $504,700.00 |

PAGE 9/9 * RCVD AT 4/5/2007 2:57:38 PM [Eastern Daylight Time] * SVR:BALTFAX01/2 * DNIS:3700 * CSID:401 278 6027 * DURATION (mm-ss):03-18





04/05/07 13:00 BANK OF AMERICA →5 1 4 9 2 ☐ ☐ ☐
03/27/2007 08:42 FAX 1221153 T&B MORTGAGE

**A.    Settlement Statement**

| B. | Type of loan. |
|---|---|

| 1. FHA | 2. FmHA | 3. Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4. VA | 5. Conv. Ins. | | 2008-OR042 | | |

C.  Note:  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower(s) | E. Name, Address, and Tax Identification Number of Seller(s) | F. Name and Address of Lender |
|---|---|---|
| T & B Development Company, LLC | Criselta Bean | n/a |

| G. Property Location (Use complete address, including legal description if necessary.) | H. Settlement Agent Name and Address | This HUD-1 approved by: |
|---|---|---|
| 144.579 acres, more or less, situate in Sherman District, of Hampshire County, WV | Carl, Keaton & Frazer, PLLC 56 E. Main St. Romney, WV 26757 | |
| | Place of Settlement | I. Settlement Date |
| | Carl, Keaton & Frazer, PLLC 56 E. Main St., Romney, WV 26757 | 05/23/2008 |

| J. | SUMMARY OF BORROWER'S TRANSACTION | | K. | SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|---|---|
| 100 | GROSS AMOUNT DUE FROM BORROWER | | 400 | GROSS AMOUNT DUE TO SELLER | |
| 101 | Contract sales price | 550,000.00 | 401 | Contract sales price | 550,000.00 |
| 102 | Personal property | | 402 | Personal property | |
| 103 | Settlement charges to borrower (line 1400) | 3,611.00 | 403 | | |
| 104 | | | 404 | | |
| 105 | | | 405 | | |
| | Adjustments for items paid by seller in advance | | | Adjustments for items paid by seller in advance | |
| 106 | City/town taxes | | 406 | City/town taxes | |
| 107 | County taxes | | 407 | County taxes | |
| 108 | Assessments | | 408 | Assessments | |
| 109 | | | 409 | | |
| 110 | | | 410 | | |
| 111 | | | 411 | | |
| 112 | | | 412 | | |
| 120 | GROSS AMOUNT DUE FROM BORROWER | 553,611.00 | 420 | GROSS AMOUNT DUE TO SELLER | 550,000.00 |
| 200 | AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500 | REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201 | Deposit or earnest money | 5,000.00 | 501 | Excess deposit | 5,000.00 |
| 202 | Principal amount of new loan(s) | | 502 | Settlement charges to seller (line 1400) | 48,330.00 |
| 203 | Existing loan(s) taken subject to | | 503 | Existing loan(s) taken subject to | |
| 204 | | | 504 | Payoff of first mortgage loan to | |
| 205 | | | 505 | Payoff of second mortgage loan | |
| 206 | | | 506 | | |
| 207 | | | 507 | | |
| 208 | | | 508 | | |
| 209 | | | 509 | | |
| | Adjustments for items unpaid by seller | | | Adjustments for items unpaid by seller | |
| 210 | City/town taxes | | 510 | City/town taxes | |
| 211 | County taxes from 01/01/08 to 05/23/08 | 17.16 | 511 | County taxes from 01/01/08 to 05/23/08 | 17.16 |
| 212 | Assessments | | 512 | Assessments | |
| 213 | | | 513 | | |
| 220 | TOTAL PAID BY/FOR BORROWER | 5,017.16 | 520 | TOTAL REDUCTION IN AMOUNT DUE SELLER | 53,347.16 |
| 300 | CASH AT SETTLEMENT FROM/TO BORROWER | | 600 | CASH AT SETTLEMENT TO/FROM SELLER | |
| 301 | Gross amount due from borrower (line 120) | 553,611.00 | 601 | Gross amount due to seller (line 420) | 550,000.00 |
| 302 | Less amount paid by/for borrower (line 220) | 5,017.16 | 602 | Less reduction amount due seller (line 520) | 53,347.16 |
| 303 | CASH TO OR FROM BORROWER | 548,593.84 | 603 | CASH TO SELLER | 496,652.84 |

The undersigned hereby acknowledge(s) receipt of a completed copy of pages 1 and 2 of this statement and any attachments referred to herein.

Borrower: _____
        T & B Development Company, LLC

Borrower: _____

Seller: _Criselta B Bean_
        Criselta Bean

| BUYER ADDRESS AFTER CLOSING | SELLER ADDRESS AFTER CLOSING |
|---|---|

Page 1 of 2



03/27/2007 08:42 FAX    J221153    MR. MORTGAGE    @006
7833221153

# SETTLEMENT STATEMENT

## L. SETTLEMENT CHARGES

| | | | | | | | PAID FROM Borrower's FUNDS AT SETTLEMENT | PAID FROM Seller's FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|---|---|---|
| 700 | Total sales broker's commission based on price of: | | 550,000.00 | @ | 9% | = 49,500.00 | | |
| | Division of commission (line 700) as follows: | | | | | | | |
| 701 | 24,750.00 to | United Country Homeplace Properties | | | | | | |
| 702 | 24,750.00 to | Keller Williams Rice Realty | | | | | | |
| 703 | Commission paid at settlement to | United Country Homeplace Properties | | | | | | 24,750.00 |
| 704 | Commission paid at settlement to | Keller Williams Rice Realty | | | | | | 24,750.00 |
| 705 | Less deposit held by | Keller Williams Rice Realty | | | | | | (5,000.00) |
| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | | | | |
| 801 | | | | | | | | |
| 802 | | | | | | | | |
| 803 | | | | | | | | |
| 804 | | | | | | | | |
| 805 | | | | | | | | |
| 806 | | | | | | | | |
| 807 | | | | | | | | |
| 808 | | | | | | | | |
| 809 | | | | | | | | |
| 810 | | | | | | | | |
| 811 | | | | | | | | |
| 812 | | | | | | | | |
| 813 | | | | | | | | |
| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | | | | |
| 901 | Interest from | @ | | per day | # days: | | | |
| 902 | Mortgage insurance premium for | PPs | | per payment period (PP) | | | | |
| 903 | Hazard insurance premium | | | | | | | |
| 904 | Credit insurance premium | PPs | @ | per payment period (PP) | | | | |
| 905 | | | | | | | | |
| 1000 | RESERVES DEPOSITED WITH LENDER | | | | | | | |
| 1001 | Hazard insurance | PPs | @ | per payment period (PP) | | | | |
| 1002 | Mortgage insurance | | | | | | | |
| 1003 | City property taxes | | | | | | | |
| 1004 | County property taxes | PPs | @ | per payment period (PP) | | | | |
| 1005 | | | | | | | | |
| 1006 | | | | | | | | |
| 1007 | | | | | | | | |
| 1008 | Aggregate escrow adjustment | | | | | | | |
| 1100 | TITLE CHARGES | | | | | | | |
| 1101 | Settlement or closing fee to | Carl, Keaton & Frazer, PLLC | | | | | 100.00 | 100.00 |
| 1102 | Abstract or title search to | | | | | | | |
| 1103 | Title examination | Carl, Keaton & Frazer, PLLC | | | | | 1,500.00 | |
| 1104 | Title insurance binder | Carl, Keaton & Frazer, PLLC | | | | | 50.00 | |
| 1105 | Document preparation | Carl, Keaton & Frazer, PLLC | | | | | | 100.00 |
| 1106 | Notary fees | | | | | | | |
| 1107 | Attorney's fees | | | | | | | |
| 1108 | Title insurance | Reliable Title Insurance Co. | | | | | 1,950.00 | |
| 1109 | Lender's coverage | $0.00 | | | | | | |
| 1110 | Owner's coverage | $550,000.00 | | | | | | |
| 1111 | Title updates | | | | | | | |
| 1112 | | | | | | | | |
| 1200 | GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | | | | |
| 1201 | Recording fees: | Deed: 11.00 | | Mortgage: | Release(s): | | 11.00 | |
| 1202 | County tax stamps: | | | | | | | 3,630.00 |
| 1203 | County taxes for: | | | | | | | |
| 1204 | | | | | | | | |
| 1205 | | | | | | | | |
| 1300 | ADDITIONAL SETTLEMENT CHARGES | | | | | | | |
| 1301 | Survey to | | | | | | | |
| 1302 | Pest inspection to | | | | | | | |
| 1303 | Courier fee | | | | | | | |
| 1304 | | | | | | | | |
| 1305 | | | | | | | | |
| 1400 | TOTAL SETTLEMENT CHARGES (enter on line 103, Section J and Line 502, Section K) | | | | | | 3,611.00 | 48,330.00 |

## INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT

The Initial Escrow Account Disclosure Statement, required by Section 10(c)(1) of the Real Estate Settlement Procedures Act (RESPA) whenever an escrow account is established for a federally related mortgage loan, is attached.

Page 2 of 2

BOOK 455 PAGE 388    68712

*Deb: 6-7-96*
*Cearl, Keaton & Frame*
*Attorney at law*

CRISELTA BEAN

TO: DEED

T & B DEVELOPMENT COMPANY, LLC,
A Virginia Limited
Liability Company

THIS DEED, Made this 23rd day of
May, 2006, by and between Criselta
Bean, grantor, party of the first
part, and T & B Development, LLC, a
Virginia Limited Liability Company
grantee, party of the second part,

WITNESSETH: That for and in consideration of the sum of Ten Dollars ($10.00), cash in hand paid, receipt whereof being hereby acknowledged, and other good and valuable consideration deemed valid at law, the said party of the first part does, by these presents, grant and convey unto the said party of the second part with covenants of General Warranty of Title, together with all rights, rights of way, privileges and appurtenances thereunto belonging, all that certain tract or parcel of land, originally containing 150 acres, more or less, together with all the buildings and improvements thereon and all rights, rights of way, easements, and waters thereunto appertaining, lying and being on Stony Mountain in Sherman District, Hampshire County, West Virginia, and which said real estate is more particularly described by metes and bounds according to a survey thereof made by H. J. Compton, Surveyor of Hampshire County, on the 1st day of June, 1921, and a plat thereof which is duly recorded in the Office of the Clerk of the County Commission of Hampshire County, West Virginia, in Deed Book No. 87, at Page 140, as follows:

"Beginning at a planted stone on the East side of Grassy Lick Road, thence with the several meanders of said road S. 37 W. 15 poles S. 58½ W. 18 poles, S. 39 W. 16 poles S. 8 W. 12 poles S. 37 W. 7.5 poles, S. 20 W. 15.6 poles, S. 37¼ W. 13.2 poles, S. 46 3/4 W. 9.2 poles, S. 44 W. 11.4 poles to a stone by a large post on the East side of said road, corner to Roy Haines and Jesse H. Shanholtz; thence with Haines' line S. 76 E. 98 poles to a stone; thence N. 40¼ E. 38.7 poles to a stone pile near a marked white oak, thence S. 69 3/4 E. 80 poles to a stone; thence S. 41 E. 78 poles to 4 chestnut oaks on top of Stony Mountain, thence N. 65 E. 23½ poles to a stone pile by 2 chestnut oaks, thence N. 24 E. 98 poles to a stone corner to Alberta R. Bowman, thence with her line N. 83¼ W. 248 poles to the beginning, containing 150 acres, more or less."

LESS, HOWEVER, that certain outconveyance of 5.241 acres, more or less, situate in Sherman District, Hampshire County West Virginia, which was conveyed by Lawrence W. Bean and Criselta Bean, his wife, unto Eddy L. Bean, by deed dated November 5, 1984, and which said deed is of record

CARL, KEATON
& FRAZER, PLLC
ATTORNEYS AT LAW
60 E. MAIN STREET
ROMNEY, WV 26757



BOOK 455 PAGE 389

2

in the Office of the Clerk of the County Commission of Hampshire County, West Virginia, in Deed Book No. 273, at page 584.  Said Deed is by reference made a part hereof for a more particular description of said outconveyance and for all pertinent and proper reasons,

THUS LEAVING for purposes of this conveyance 144.759 acres, more or less, according to the 2005 Hampshire County Land Books, and this conveyance is made in gross and not by the acre.

And being the same real estate which was conveyed unto Lawrence W. Bean and Criselta Bean, his wife, by Deed of Rose L. Bowman and E. F. Bowman, her husband, dated December 22, 1947, and which deed is of record in the Office of the Clerk of the County Commission of Hampshire County, West Virginia, in Deed Book No. 113, at page 387.  The said Lawrence W. Bean died intestate on April 4, 1997, leaving as his sole heir at law his wife, Criselta Bean, the grantor herein.  The estate records for Lawrence W. Bean indicate that he was survived by his six children.  However, these were the only children Lawrence W. Bean had, and they were all born to he and his wife, Criselta Bean, and she had no other children, thus Criselta Bean, as his surviving spouse, and neither of them having children from any other parties, is the sole heir at law of Lawrence W. Bean.

There is conveyed with said real estate that certain 15 foot wide right of way which was reserved unto Lawrence W. Bean and Criselta Bean in that certain deed dated November 5, 1984, and of record in the Office of the Clerk of the County Commission of Hampshire County, West Virginia, in Deed Book No. 273, at page 584.

The real estate conveyed herein is taken subject to those certain Court Orders, dated July 27, 1999, and July 21, 2005, and of record in the Office of the Clerk of the County Commission of Hampshire County, West Virginia, in Deed Book No. 394, at page 362, and in Deed Book No. 445, at page 789, and same are incorporated herein for all pertinent and proper reasons, including for a more particular description of the rights of way set forth therein.

Although the real estate taxes may be prorated between the parties as of the day of closing for the current tax year, the grantee agrees to

CARL, KEATON
& FRAZER, PLLC
ATTORNEYS AT LAW
86 E. MAIN STREET
ROMNEY, WV 26757

BOOK 455 PAGE 390

3

assume and be solely responsible for the real estate taxes beginning with the calendar year 2006, although same may still be assessed in the name of the grantor.

TO HAVE AND TO HOLD the aforesaid real estate unto the said grantee, together with all rights, ways, buildings, houses, improvements, easements, timbers, waters, minerals and mineral rights, and all other appurtenances thereunto belonging, in fee simple forever.

I hereby certify, under penalties as prescribed by law that the actual consideration paid for the real estate, conveyed by the foregoing and attached deed is $ 550,000.00.

WITNESS the following signature and seal:

_Criselta B. Bean_ (SEAL)
Criselta Bean

STATE OF WEST VIRGINIA,

COUNTY OF HAMPSHIRE, TO WIT:

I, _Marcia A. Keister_ , a Notary Public, in and for the county and state aforesaid, do hereby certify that Criselta Bean, whose name is signed and affixed to the foregoing deed dated the 23rd day of May, 2006, has this day acknowledged the same before me in my said county and state.

Given under my hand and Notarial Seal this 23 _rd_ day of May, 2006.

OFFICIAL SEAL
Notary Public, State of West Virginia
MARCIA A. KEISTER
Carl, Keaton & Frazer, PLLC
55 E. Main St., Romney, WV 26757
My Commission Expires Oct. 14, 2013

_Marcia A. Keister_
Notary Public

*This instrument was prepared by William C. Keaton, Attorney at Law, Romney, West Virginia.*
Njhdeeds/T & B Development Co from Bean.144.759 acres
Mak/5-18-06

ARL, KEATON
FRAZER, P.L.L.C
FORMEYS AT LAW
E. MAIN STREET
MNEY, WV 26757

STATE OF WEST VIRGINIA, Hampshire County Commission Clerk's Office ___5/24/06___ ___11:37 am___

The foregoing instrument, together with the certificate of its acknowledgment, was this day presented in said office and admitted to record.

Teste ___Sharon H. Link___ Clerk.

**VIRGINIA:**

IN THE CIRCUIT COURT OF FAIRFAX COUNTY **FILED**

|  |  |
|---|---|
| **FIA CARD SERVICES, N.A.,** | * |
| **Plaintiff,** | * |
|  | * |
| v. | * |
|  | * |
| **T&B MORTGAGE CORPORATION,** | * |
| Serve:  Registered Agent | * |
| Jin K. Chang | * |
| 12015 Lee Jackson Highway, #540 | * |
| Fairfax, Virginia  22033 | * |
|  | * |
| and | * |
|  | * |
| **T&B DEVELOPMENT COMPANY, LLC** | * |
| Serve:  Registered Agent | * |
| Business Filings Incorporated | * |
| 4701 Cox Road, Suite 301 | * |
| Glen Allen, Virginia  23060-6802 | * |
|  | * |
| Defendants. | * |
|  | * |

SEP **1 0** 2007

JOHN T. FREY
Clerk of the Circuit Court
of Fairfax County, VA

Civil No.  2007 10 975

## MEMORANDUM OF LIS PENDENS

1.     Title of the Cause:  FIA Card Services, N.A. v. T&B Mortgage

Corporation and T&B Development Company, LLC.

2.     The General Object Thereof:  To avoid as fraudulent and voluntary

conveyances pursuant to Va. Code §§ 55-80, 81, and 82, the Deed dated on or about May

23, 2006, to T&B Development, LLC, and recorded in Deed Book 455, page 388, of the

land records of Hampshire County, West Virginia.

3.     The Court Wherein Pending: Circuit Court of Fairfax County, Virginia.

4.     The Amount of The Claim Asserted:  $490,000, plus interest, legal fees

and costs.

5.    A Description of the Property:

Beginning at a planted stone on the East side of Grassy Lick
Road, thence with the several meanders of said road S. 37 W. 15
poles S. 58 ½ W. 18 poles, S. 39 W. 16 poles S. 8 W. 12 poles S.
37 W. 7.5 poles, S. 20 W. 15.6 poles, S. 37 ½ W. 13.2 poles, S.
46 ¾ W. 9.2 poles, S. 4 ½ W. 11.4 poles to a stone by a large
post on the East side of said road, corner to Roy Haines and
Jesse H. Shanholtz; thence with Haines' line S. 76 E. 98 poles to
a stone; thence N. 40 1/4 E. 38.7 poles to a stone pile near a
marked white oak, thence S. 69 ¾ E. 80 poles to a stone; thence
S. 41 E. 78 poles to 4 chestnut oaks on top of Stony Mountain,
thence N. 65 E. 23 ½ poles to a stone pile by 2 chestnut oaks,
thence N. 24 E. 98 poles to a stone corner to Alberta R.
Bowman, thence with her line N. 83 ½ W. 248 poles to the
beginning, containing 150 acres, more or less."

LESS, HOWEVER, that certain outconveyance of 5.241 acres,
more or less, situate in Sherman District, Hampshire County
West Virginia, which was conveyed by Lawrence W. Bean and
Criselta Bean, his wife, unto Eddy L. Bean, by deed dated
November 5, 1984, and which said deed is of record in the
Office of the Clerk of the County Commission of Hampshire
County, West Virginia, in Deed Book No. 273, at page 584.
Said Deed is by reference made a part hereof for a more
particular description of said outconveyance and for all pertinent
and proper reasons.

        THUS LEAVING for purposes of this conveyance
144.759 acres, more or less, according to the 2005 Hampshire
County Land Books, and this conveyance is made in gross and
not by the acre.

6.    The Names of the Persons Whose Estates Are Intended to be Affected

Thereby:

**T&B DEVELOPMENT COMPANY, LLC.**

                                    Respectfully submitted,

                                    FIA Card Services, N.A.
                                    Plaintiff, by counsel

**MILES & STOCKBRIDGE P.C.**
1751 Pinnacle Drive, Suite 500
McLean, VA 22102
Tel:    (703) 610-8664
Fax:    (703) 610-8686
bkenney@milesstockbridge.com


By:    _____
        Brian F. Kenney (VSB #23199)
        Counsel for FIA Card Services, N.A.


Commonwealth of Virginia
County of Fairfax:

The foregoing Memorandum of Lis Pendens was acknowledged before me this _10th_ day
of _September_ , 2007, by Brian F. Kenney, attorney for and authorized agent of FIA
Card Services, N.A., in the foregoing jurisdiction.


                                    _____
                                         Notary Public


My Commission Expires:  _11 – 30 – 07_

Notary Public No.:    _105826_

```
MARY A. JACOBS
Notary Public
Commonwealth of Virginia
My Commission Expires Nov 30, 2007
```

BRAIN F KENNEY
MCLEAN, VA 22102-3833

**V I R G I N I A :**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

|  |  |  |
|---|---|---|
| **FIA CARD SERVICES, N.A.,** | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **T&B MORTGAGE CORPORATION,** | * | **Civil No. 2007-10975** |
| **Serve: Registered Agent** | * | |
| **Jin K. Chang** | * | |
| **12015 Lee Jackson Highway, #540** | * | |
| **Fairfax, Virginia 22033** | * | |
| | * | |
| **and** | * | |
| | * | |
| **T&B DEVELOPMENT COMPANY, LLC** | * | |
| **Serve: Registered Agent** | * | |
| **Business Filings Incorporated** | * | |
| **4701 Cox Road, Suite 301** | * | |
| **Glen Allen, Virginia 23060-6802** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

## MEMORANDUM OF LIS PENDENS

      1.    <u>Title of the Cause:</u> FIA Card Services, N.A. v. T&B Mortgage

Corporation and T&B Development Company, LLC.

      2.    <u>The General Object Thereof:</u> To avoid as fraudulent and voluntary

conveyances pursuant to Va. Code §§ 55-80, 81, and 82, the Deed dated on or about May

23, 2006, to T&B Development, LLC, and recorded in Deed Book 455, page 388, of the

land records of Hampshire County, West Virginia.

      3.    <u>The Court Wherein Pending</u>: Circuit Court of Fairfax County, Virginia.

      4.    <u>The Amount of The Claim Asserted</u>: $490,000, plus interest, legal fees

and costs.

5.     <u>A Description of the Property</u>:

Beginning at a planted stone on the East side of Grassy Lick
Road, thence with the several meanders of said road S. 37 W. 15
poles S. 58 ½ W. 18 poles, S. 39 W. 16 poles S. 8 W. 12 poles S.
37 W. 7.5 poles, S. 20 W. 15.6 poles, S. 37 ½ W. 13.2 poles, S.
46 ¾ W. 9.2 poles, S. 4 ½ W. 11.4 poles to a stone by a large
post on the East side of said road, corner to Roy Haines and
Jesse H. Shanholtz; thence with Haines' line S. 76 E. 98 poles to
a stone; thence N. 40 1/4 E. 38.7 poles to a stone pile near a
marked white oak, thence S. 69 ¾ E. 80 poles to a stone; thence
S. 41 E. 78 poles to 4 chestnut oaks on top of Stony Mountain,
thence N. 65 E. 23 ½ poles to a stone pile by 2 chestnut oaks,
thence N. 24 E. 98 poles to a stone corner to Alberta R.
Bowman, thence with her line N. 83 ½ W. 248 poles to the
beginning, containing 150 acres, more or less."

LESS, HOWEVER, that certain outconveyance of 5.241 acres,
more or less, situate in Sherman District, Hampshire County
West Virginia, which was conveyed by Lawrence W. Bean and
Criselta Bean, his wife, unto Eddy L. Bean, by deed dated
November 5, 1984, and which said deed is of record in the
Office of the Clerk of the County Commission of Hampshire
County, West Virginia, in Deed Book No. 273, at page 584.
Said Deed is by reference made a part hereof for a more
particular description of said outconveyance and for all pertinent
and proper reasons.

       THUS LEAVING for purposes of this conveyance
144.759 acres, more or less, according to the 2005 Hampshire
County Land Books, and this conveyance is made in gross and
not by the acre.

6.     <u>The Names of the Persons Whose Estates Are Intended to be Affected</u>

Thereby:

**T&B DEVELOPMENT COMPANY, LLC.**

                 Respectfully submitted,

                 FIA Card Services, N.A.
                 Plaintiff, by counsel

BOOK    2 PAGE 106

**MILES & STOCKBRIDGE P.C.**
1751 Pinnacle Drive, Suite 500
McLean, VA 22102
Tel:    (703) 610-8664
Fax:    (703) 610-8686
bkenney@milesstockbridge.com


By:    _____
Brian F. Kenney (VSB #23199)
Counsel for FIA Card Services, N.A.


Commonwealth of Virginia
County of Fairfax:

The foregoing Memorandum of Lis Pendens was acknowledged before me this 12th day
of _September_, 2007, by Brian F. Kenney, attorney for and authorized agent of FIA
Card Services, N.A., in the foregoing jurisdiction.

_____
Notary Public

My Commission Expires:    11-30-07

Notary Public No.:    105826

```
MARY A. JACOBS
Notary Public
Commonwealth of Virginia
My Commission Expires Nov 30, 2007
```

SHARON H LINK
HAMPSHIRE County 11:57:57 AM
Instrument No 100058
Date Recorded 09/13/2007
Document Type LIS
Book-Page 2-104
Rec/Preserve $5.00  $1.00

Client Documents:4814-2023-7057v1|000001-#BRCH7|8/27/2007

**STATE OF WEST VIRGINIA,** Hampshire County Commission Clerk's Office_____ 9/13/07 _____ 11:57AM

    The foregoing Instrument, together with the certificate of its acknowledgment, was this day presented in said office and admitted to record.

                                        Teste _____*Sharon H. Link*_____Clerk.

CASTO & HARRIS, INC., SPENCER, WV RE-ORDER NO. 19902-06 12/06 CTP

*FS*

# FAIRFAX COUNTY CIRCUIT COURT

COMPUTER SECTION

FIA Card Services NA vs. T & B Mortgage Corporation, et al.    07 SEP 19 PM 3: 27    CL-2007-0010975

JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

**TO:**    T & B Mortgage Corporation
Serve: Jin K Chang R/A
12015 Lee Jackson Highway #540
Fairfax  VA  22033

**Complaint**

## SHERIFFS USE ONLY:

☐   Personal Service

Being unable to make personal service, a copy was delivered in the following manner:

☐   Delivered to person found in charge of usual place of business or employment during business hours and giving information of its purport. _____

_____

☐   Delivered to family member (not temporary sojourner or guest) age 16 or older at usual place of abode of party named above after giving information of its purport.  List name, age of recipient, and relation of recipient to party named above.

_____

☐   Posted on front door or such other door as appears to be the main entrance of usual place of abode, address listed above. (Other authorized recipient not found)

☐   Served on Secretary of the Commonwealth       *NO suite #540    No matching on Directory!*

☐   Served on the Clerk of the State Corporation Commission pursuant to Virginia Code §8.01-513

☐   Served on registered agent of the corporation.  List name and title: _____

_____

☐   Served on the Commissioner of the Department of Motor Vehicles

☒   **Not found**       Stan G. Barry, Sheriff
                          Fairfax, Virginia                            , Sheriff

**SEP 1 2007** *12 40P*

**Date**       by _____
                    **Serving Deputy Sheriff**

_____
**City or County of Locality**

## FAIRFAX COUNTY CIRCUIT COURT

FIA Card Services NA vs. T & B Mortgage Corporation, etal.                    CL-2007-0010975

TO:    T & ᴅ Development Company LLC
       Serve Buisness Filings Incorporated
       470ᵢ ᵢox Road Suite 301
       Glen Allen VA 23060-6802

\1204705

2007 SEP 27 PM 1:45
JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

FILED
COMPUTER SECTION

### Complaint

### SHERIFFS USE ONLY:

☐  **Personal Service**

   **Being unable to make personal service, a copy was delivered in the following manner:**

☐  Delivered to person found in charge of usual place of business or employment during
   business hours and giving information of its purport. _____
   _____

☐  Delivered to family member (not temporary sojourner or guest) age 16 or older at usual
   place of abode of party named above after giving information of its purport.  List name, age
   of recipient, and relation of recipient to party named above.
   _____

☐  Posted on front door or such other door as appears to be the main entrance of usual place of
   abode, address listed above. (Other authorized recipient not found)

☐  Served on Secretary of the Commonwealth

☐  Served on the Clerk of the State Corporation Commission pursuant to Virginia Code §8.01-
   513

☐  Served on registered agent of the corporation.  List name and title: _____
   _____

☐  Served on the Commissioner of the Department of Motor Vehicles

☐  Not found

   _____ , Sheriff

_____       by _____
**Date**                            **Serving Deputy Sheriff**

                         _____
                              **City or County of Locality**

*Over* ⟶

NAME AND ADDRESS
SAME AS FRONT

NAME:

☐ PERSONAL SERVICE

☐ Being unable to make personal service, a copy was
delivered in the following manner:

☐ Delivered to person found in charge of usual place of
business or employment during business hours and
giving information to its purport.

☐ Delivered to family member (not a temporary sojourner
or guest) age 16 or older at usual place of abode of
party named above giving information of its purport.
List name, age of recipient and relation of recipient
to party named above.

☐ Posted on the common door of usual place of abode,
address listed above. (Other authorized recipient not
found.)

☐ Copy mailed to judgment debtor on date below after
serving the garnishee unless a different date is
shown below.

☐ Evicted       ☐ Not Evicted
☐ Served on registered agent

☐ Not found

☐ NO EFFECTS FOUND                    DEPUTY SHERIFF

9-21-0

DATE                    FOR: Sheriff Michael L. Wade
                             Henrico County, Virginia

# BizFilings℠

REGISTERED AGENT SERVICES

## Resignation Notice

BizFilings has resigned with the state as registered agent for this company.

Company Name: _T & B Development Company, LLC_

Effective Date: _August 7, 2007_

We are returning the enclosed documents to you.

BizFilings
Registered Agent Department

8025 Excelsior Drive ▪ Suite 200 ▪ Madison, WI 53717
800.981.7183 ▪ 608.827.5300 ▪ fax 608.827.5501
www.bizfilings.com

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | |
|---|---|
| **FIA CARD SERVICES, N.A.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 2007-10975** |
| ) | |
| **T&B MORTGAGE CORPORATION,** ) | |
| **and T&B DEVELOPMENT** ) | |
| **COMPANY, LLC,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## <u>AFFIDAVIT</u>

I, Brian F. Kenney, Esquire, of Miles & Stockbridge P.C., counsel for FIA Card Services, N.A., as successor in interest to Bank of America, N.A. (USA), declares as follows:

1.      On or about September 10, 2007, I caused to be filed with the above-named Court, a Complaint against Defendants T&B Mortgage Corporation and T&B Development Company, LLC.

2.      On or about September 21, 2007, service of a copy of the Summons and Complaint was attempted on the Agent for Service of Process for T&B Development Company, LLC. Attached hereby marked as Exhibit 1 is a true and correct copy of the Return of Service.

3.      On or about October 12, 2007, a search of the Virginia State Corporation Commission records revealed that the status of the Registered Agent for T&B Development Company, LLC, had been resigned on or about August 7, 2007. Further

search of the Virginia State Corporation Commission records revealed that there is no

current Registered Agent for T&B Development Company, LLC. Attached hereto

marked as Exhibit 2 are true and correct copies of the Resignation Notice and records

search of the Virginia State Corporation Commission.

4.     As there is no Agent registered with the Commonwealth of Virginia to

accept service of the Summons and Complaint, pursuant to Virginia Code sections 8.01-

329, the Clerk of the Secretary of the Commonwealth may be served with legal service as

statutory agent of said defendant.

> Respectfully submitted,
> FIA Card Services, N.A.
> As successor in interest to
> Bank of America, N.A. (USA)

**Miles & Stockbridge P.C.**
1751 Pinnacle Drive, Suite 500
McLean, VA 220102
703-610-8664
703-610-8686 (facsimile)
bkenney@milesstockbridge.com

By: _B — Fil_____
    Brian F. Kenney (VSB #23199)
    Counsel for FIA Card Services, N.A.
    As successor in interest to
    Bank of America, N.A. (USA)

Commonwealth of Virginia
County of Fairfax; to wit:

    The foregoing Affidavit was subscribed and sworn under penalty of perjury by
Brian F. Kenney, counsel for FIA Card Services, N.A., in the aforesaid jurisdiction, this
8th day of November 2007.

                                    _Patti B. Toohey_____
                                    Notary Public

My Commission Expires _June 30, 2010_

PATTI B. TOOHEY
Notary Public
Commonwealth of Virginia
7038847
My Commission Expires Jun 30, 2010

Client Documents:4834-2925-1585v1|BOA-000025|10/15/2007

| **SENDER:** *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by (Printed Name) C. Date of Delivery |
| 1. Article Addressed to:<br><br>ELIZABETH JEFFRIES, DIRECTOR<br>OFC. SECRETARY OF THE<br>COMMONWEALTH<br>SERVICE OF PROCESS DEPARTMENT<br>PO BOX 2452<br>RICHMOND, VA 23218-2452 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)* ☐ Yes |
| 2. Article Number<br>    *(Transfer from service label)* | 7005 0390 0003 0165 6924 |

PS Form 3811, February 2004          Domestic Return Receipt                    102595-02-M-1540

## FAIRFAX COUNTY CIRCUIT COURT

FIA Card Services NA vs. T & B Mortgage Corporation, etal.                    CL-2007-0010975

TO:    T & ₂ Development Company LLC
       Serve Buisness Filings Incorporated
       470ì ˀox Road Suite 301
       Glen Allen   VA   23060-6802

*1204705*

FILED
COMPUTER SECTION
2007 SEP 27   PM 1:45
JOHN T. FREY
CLERK CIRCUIT COURT
FAIRFAX. VA

### Complaint

### SHERIFFS USE ONLY:

☐   **Personal Service**

    **Being unable to make personal service, a copy was delivered in the following manner:**

☐   **Delivered to person found in charge of usual place of business or employment during business hours and giving information of its purport.** _____

_____

☐   **Delivered to family member (not temporary sojourner or guest) age 16 or older at usual place of abode of party named above after giving information of its purport.  List name, age of recipient, and relation of recipient to party named above.**

_____

☐   **Posted on front door or such other door as appears to be the main entrance of usual place of abode, address listed above. (Other authorized recipient not found)**

☐   **Served on Secretary of the Commonwealth**

☐   **Served on the Clerk of the State Corporation Commission pursuant to Virginia Code §8.01-513**

☐   **Served on registered agent of the corporation.  List name and title:** _____

_____

☐   **Served on the Commissioner of the Department of Motor Vehicles**

☐   **Not found**

_____, **Sheriff**

_____   **by** _____

**Date**                                   **Serving Deputy Sheriff**

_____

**City or County of Locality**

*over* →

NAME ......

☐ PERSONAL SERVICE

☐ Being unable to make personal service, a copy was
delivered in the following manner:

☐ Delivered to person found in charge of usual place of
business or employment during business hours and
giving information to its purport.

☐ Delivered to family member (not temporary sojourner
or guest) age 16 or older at usual place of abode of
party named above giving information of its purport.
List name, age of recipient and relation of recipient
to party named above.

☐ Posted on the common door of usual place of abode,
address listed above. (Other authorized recipient not
found.)

☐ Copy mailed to judgment debtor on date below after
serving the garnishee unless a different date is
shown below.

☐ Evicted        ☐ Not Evicted

☐ Served on registered agent:

☐ Not found

☐ NO EFFECTS FOUND                    DEPUTY SHERIFF

9-2-0
DATE

FOR: Sheriff Michael L. Wade
Henrico County, Virginia



REGISTERED AGENT SERVICES

## Resignation Notice

BizFilings has resigned with the state as registered agent for this company.

Company Name: _T & B Development Company, LLC_

Effective Date: _August 7, 2007_

We are returning the enclosed documents to you.

BizFilings
Registered Agent Department

8025 Excelsior Drive • Suite 200 • Madison, WI 53717
800.981.7183 • 608.827.5300 • fax 608.827.5501
www.bizfilings.com